Richard J. Grabowski (SBN 125666)
rgrabowski@jonesday.com
Steven M. Zadravecz (SBN 185676)
szadravecz@jonesday.com
Edward S. Chang (SBN 241682)
echang@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92614
Telephone:   (949) 851-3939
Facsimile:    (949) 553-7539

Attorneys for Plaintiff
APPLIED MEDICAL DISTRIBUTION
CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **APPLIED MEDICAL DISTRIBUTION CORPORATION,** a California corporation, <br><br> **Plaintiff,** <br><br> v. <br><br> **MEDEN, INC., a South Korean corporation, MEDAS, INC., a South Korean corporation, AH SUNG INTERNATIONAL, INC., a South Korean corporation, SOON KYUNG PARK, an individual, EUN KYOO CHOI, an individual, DOES 1-50** <br><br> **Defendants.** | **Case No. 8:20-cv-1934** <br><br> **COMPLAINT FOR** <br><br> **(1) DECLARATORY RELIEF** <br><br> **(2) BREACH OF CONTRACT** <br><br> **(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **(4) INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br><br> **(5) PROMISSORY FRAUD** <br><br> **(6) FRAUD/INTENTIONAL MISREPRESENTATION** <br><br> **(7) NEGLIGENT MISREPRESENTATION** <br><br> **(8) UNFAIR COMPETITION** |

Plaintiff Applied Medical Distribution Corporation ("Applied Medical"), a California Corporation, files this Complaint against Defendants Meden, Inc. ("Meden"), a South Korean corporation, Medas, Inc. ("Medas"), a South Korean corporation, Ah Sung International, Inc. ("Ah Sung"), a South Korean corporation,

Soon Kyung (aka Sun Gyeong) Park ("Park") an individual and principal at Meden and/or Medas and Medas' President, and Eun Kyoo (aka Eun Gyu) Choi ("Choi"), an individual and Ah Sung's President, CEO, principal and sole shareholder (collectively, "Defendants"), and alleges as follows:

## **INTRODUCTION**

1.     This is an action for declaratory judgment seeking to determine the rights and obligations of the parties under the terms of a Distribution Agreement (the "Agreement"), and for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with prospective economic advantage, promissory fraud, fraud and misrepresentation, and unfair competition against Defendants for their unlawful counterfeiting and copying of Applied Medical's products for illegal distribution in South Korea.  The Agreement, effective as of January 1, 2010, and amended multiple times between that date and September 1, 2014, was entered into between Applied Medical and Ah Sung to memorialize Applied Medical and Ah Sung's agreement for the sale by Applied Medical and distribution by Ah Sung of certain medical devices in South Korea, the territory listed in Exhibit B to the Agreement.  A true and correct, fully executed copy of the operative Agreement governing the parties' relationship and all amendments thereto (all of which were executed by Mr. Choi) are attached hereto as Exhibit 1.

2.     As relevant to this Complaint, the Agreement contained a number of terms that were intended to protect Applied Medical's intellectual property and other rights with respect to its products and medical devices.  For example, the Agreement contained an express provision that Ah Sung and its employees/agents, successors and assigns—including Defendants—were not permitted to "manufacture, duplicate or otherwise copy or reproduce any of the Products" (Section 3(b)) which Ah Sung agreed to distribute on behalf of Applied Medical in South Korea, and that Ah Sung (and Defendants) had "no right, title or interest in the product lines that include the Products nor any intellectual property of Applied"

COMPLAINT
Case No. 8:20-cv-1934

and its family of companies (Section 3(a)).  Despite these and other terms, Applied Medical is informed and believes that Defendants (and each of them) have and continue to participate in a scheme to manufacture, sell and distribute copies of Applied Medical products in South Korea, in violation of the Agreement and applicable law.  This includes applying for and receiving nearly a dozen registered patents in South Korea for medical products that are exact copies of, or virtually identical to, Applied Medical products.

3.     Specifically, Applied Medical is informed and believes that companies or persons affiliated with Ah Sung, including Meden, Medas, and Ms. Park (the President of Meden/Medas and Mr. Choi's wife) have engaged in an unlawful enterprise to copy dozens of Applied Medical product lines, and continue to manufacture, sell and distribute such counterfeit products (Counterfeit Devices, as that term is defined below) in South Korea to over a dozen hospitals and distribution customers.  Applied Medical recently learned that estimated annual revenue by Meden and/or Medas relating to the manufacture and sale of these illegal and copied products exceeds $1 million US, in direct competition to Applied Medical in South Korea.  Applied Medical also recently learned that Defendants applied for and received patents in South Korea for the copied and counterfeit Applied Medical products on behalf of Meden and/or Medas.

4.     On September 23, 2016, Applied Medical obtained a final judgment in this Court against Ah Sung and Mr. Choi, jointly and severally, on different claims alleged in a separate U.S. action.  (*See* C.D. Cal., Case No. 8:14-CV-01900-JVS-DFM (the "Prior Action"), Dkt. Nos. 60, 201.)  In the Prior Action, Applied Medical prevailed on breach of contract and other claims relating to Ah Sung and Choi's violations of other distribution obligations under the Agreement relating to the termination of the Agreement and transition for direct sales of Applied Medical products in South Korea.  At the time the Prior Action was litigated, Applied Medical was not aware of the material facts underpinning this action.  Applied

Medical is currently seeking to enforce the Prior Action's judgment against Ah Sung and Choi in South Korea, but has learned that Ah Sung and Choi have abused corporate forms, including with respect to Meden and Medas, to evade liability and further defraud Applied Medical.

## **THE PARTIES**

4.      Plaintiff Applied Medical is a corporation incorporated under the laws of the State of California with its principal place of business at 22872 Avenida Empressa, Rancho Santa Margarita, California 92688.  Applied Medical is a marketer and world-wide distributor of specialized surgical devices manufactured by its parent company, Applied Medical Resources Corporation ("AMRC").  Applied Medical is AMRC's global distribution arm and wholly-owned subsidiary, and distributes (or distributed) AMRC's products worldwide both directly and indirectly through independent distributors like Ah Sung in South Korea.

5.      Applied Medical is informed and believes that Defendant Meden is a South Korean corporation with its principal place of business at RM 601, Hoseouuniv. Venturetower, 319, Gasan-Dong, Geumcheon-Ku, Seoul, Korea.

6.      Applied Medical is informed and believes that Defendant Medas is a South Korean corporation with its principal place of business at 70, Gasan Digital 1-ro, Geumcheon-Ku, Seoul, Korea.

7.      Applied Medical is informed and believes that Defendant Ah Sung is a South Korean corporation with its principal place of business at RM 801, Hoseouuniv. Venturetower, 319, Gasan-Dong, Geumcheon-Ku, Seoul, Korea.

8.      Applied Medical is informed and believes that Soon Kyung Park is a resident of South Korea.  Applied Medical is further informed and believes that Ms. Park is Eun Kyoo Choi's wife, and is also the President, principal and majority shareholder of Meden and/or Medas.

9.      Applied Medical is informed and believes that Eun Kyoo Choi is a resident of South Korea.  Applied Medical is further informed and believes that

COMPLAINT
Case No. 8:20-cv-1934

Choi is the President, CEO, principal, and sole shareholder of Ah Sung, and also has financial interests in Meden and/or Medas.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter under 28 U.S.C. §1332. The parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Court also has jurisdiction over the parties because Applied Medical and Ah Sung (and Defendants) contractually consented to the jurisdiction of this Court in paragraph 10(a) of the Agreement, entitled "Governing Law and Jurisdiction," which provides in relevant part: "[t]he federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement."

11. California substantive law is also applicable to the parties' dispute because the choice of law provision in the Agreement at paragraph 10(a) provides that: "[the] Agreement shall be governed by and construed under the laws of the State of California." Under California law, mandatory forum selection clauses, contractual consents to jurisdiction, and choice of law provisions are valid, binding and enforceable.

12. Defendants, and each of them, are subject to the forum selection, jurisdiction, and the choice of law provisions contained in the parties' Agreement as agents, affiliates, related entities/persons, or alter-egos of Ah Sung and/or Mr. Choi. Mr. Choi signed the Agreement on behalf of Ah Sung as its President and directly oversaw the Applied Medical account. Applied Medical is also informed and believes that Mr. Choi was responsible for all material business decisions regarding Applied Medical, and personally managed virtually all aspects of the parties' relationship, and orchestrated the misconduct addressed in this Complaint.

13. Mr. Choi also testified at his deposition in the Prior Action that he and Ah Sung were one and the same. Indeed, through the course of litigating the Prior Action, and in an effort to evade liability arising from the Prior Action, Applied

COMPLAINT
Case No. 8:20-cv-1934

Medical learned that Ah Sung's corporate form may have been a sham form the outset, and that Mr. Choi, as an individual or sole proprietor, stood in the shoes of Ah Sung at all times.

14.     Mr. Choi further testified at his deposition in the Prior Action that Meden and/or Medas are companies managed or owned by his wife, Soon Kyung Park, which are entities currently in the business of manufacturing and/or distributing medical device products in South Korea—including counterfeit or copied Applied Medical product.  Mr. Choi also previously testified that Ms. Park was the "President" of Meden and/or Medas.  Applied Medical is also informed and believes that Ms. Park (among other family members) maintain ownership interests in "Ah Sung," the purported party entity to the Agreement.

15.     California law is clear that forum selection clauses bind a wide range of transaction participants, both parties and non-parties to the written Agreement. This is particularly true where the alleged liability of the non-signatories is closely related to the contractual relationship (or the business activities, breaches, or other obligations and liabilities arising out of the contractual relationship), as is the case here.

16.     Venue is proper under 28 U.S.C. §§ 1391(a), as the Agreement was entered into in this district and Ah Sung (and by extension, all Defendants) are subject to and consented to jurisdiction in this district under paragraph 10(a) of the Agreement.  Venue is also proper in this district as to all Defendants for the same reasons expressed in paragraphs 10-15 above.

## **FACTUAL BACKGROUND**

17.     Applied Medical distributes AMRC's products worldwide through various channels of distribution, including through independent distributors like defendant Ah Sung in South Korea during the Agreement's term.  AMRC is one of the largest private employers in Orange County, CA, and is a developer, manufacturer, and marketer of specialized surgical devices, and creates products

COMPLAINT
Case No. 8:20-cv-1934

designed to enhance surgical techniques in minimally invasive surgery, such as laparoscopic, cardiovascular, vascular, urology and general surgery.  Applied Medical and AMRC, both of which are headquartered in Orange County, CA, have had their principal places of business in Orange County, CA since their founding.

18.     Upon information and belief, defendants Meden and Medas are medical and surgical device manufacturers and distributors located and doing business in South Korea.  Applied Medical is also informed and believes that Meden and Medas are South Korean corporations.

19.     Upon information and belief, defendant Ah Sung is a medical and surgical device distributor located and doing business in South Korea.  Applied Medical is also informed and believes that Ah Sung is a South Korean corporation.

20.     Upon information and belief, defendant Eun Kyoo Choi is the President, CEO, principal and sole shareholder of Ah Sung and resides in South Korea.  During the course of the parties' business relationship, Mr. Choi executed all distribution agreements on behalf of Ah Sung, including the Agreement and the Agreement's nine amendments.

21.     Upon information and belief, defendant Soon Kyung Park is the President of Meden and/or Medas, and maintains ownership interest in these companies and Ah Sung.   Ms. Park is also Mr. Choi's spouse.

22.     On or about January 18, 2010, Applied Medical and Ah Sung entered into the Agreement, effective January 1, 2010, to memorialize the terms of distribution for South Korea, the territory listed in Exhibit B to the Agreement.  The Agreement and all amendments thereto were bargained for, at arm's-length, between representatives of Applied Medical and Mr. Choi.  In the Agreement, Applied Medical agreed to sell (and Ah Sung agreed to buy) various surgical devices for distribution in South Korea under the terms and conditions set forth in the Agreement.  The parties had done business together since in or around 2000, a relationship which was been governed by other, previous written contracts (which

COMPLAINT
Case No. 8:20-cv-1934

were also executed by Mr. Choi).  The Agreement was the latest iteration of a writing governing the parties' business relationship, and by its terms, superseded all prior agreement, written or otherwise.

23.   Under paragraph 10(a) of the Agreement, entitled "Governing Law and Jurisdiction" the parties agreed that: "[t]his Agreement shall be governed by and construed under the laws of the State of California.  The federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement.  Distributor [Ah Sung] hereby expressly consents to (i) the personal jurisdiction of the federal and state courts within California, (ii) service of process being effected upon it by registered mail sent to the address set forth at the beginning of this Agreement, and (iii) the uncontested enforcement of final judgment from such courts in any other jurisdiction wherein Distributor or any of its assets are present."  Thus, Ah Sung (and by extension, Defendants) expressly agreed that any disputes arising out of the Agreement would be adjudicated in a California forum under California law, and expressly consented to personal jurisdiction in California.

24.   Under paragraph 3 of the Agreement, entitled "Limited Rights," the parties agreed under subsection (a) agreed that "Distributor … has no right, title or interest in the product lines that include the Products nor in any intellectual property of Applied, its parent, subsidiaries or affiliates, including, but not limited to, patents, trademarks, trade names, domain names, inventions, copyrights, know-how, and trade secrets, related to the design, manufacture, operation or service of the products."  The parties further agreed under subsection (b) that "Sale Conveys No Right to Manufacture or Copy," and that "such sale [of Products] does not convey any license, expressly or by implication, to manufacture, duplicate or otherwise copy or reproduce any of the Products."  Thus, Defendants, and each of them, were not permitted to copy Applied Medical products or misappropriate Applied Medical's intellectual property under the express terms of the Agreement.

25. Under paragraph 9(a) of the Agreement entitled "Term of Agreement," the parties agreed that "[u]nless extended by mutual agreement in writing, this Agreement terminates on December 31, 2014."

26. Paragraph 9(h) also provides that after termination, Applied Medical is entitled to assume, either directly or through a designee, Ah Sung's obligations under on-going "tenders" or their equivalent (if applicable), which include product and other registrations in South Korea, including licensing and intellectual property registrations, in its sole discretion. To that end, Ah Sung further agreed that: "Distributor shall plan for, fully cooperate with Applied and take all steps required to support the complete transition of all tender-related business (or equivalent of tenders in the Territory) to Applied consistent with this Subsection." Thus, Ah Sung expressly agreed that if the Agreement expired, Applied Medical would have the sole discretion to assume Ah Sung's obligations in each respective territory for ongoing tenders post-termination, and that Ah Sung would fully cooperate in the transition process post-termination, including with regard to product and intellectual property registrations in South Korea.

27. Paragraph 7(b) of the Agreement entitled "Warranty" further provides that "Distributor warrants to Applied that, as of the Effective Date, it does not represent or promote any products or product lines that compete with one or more Products. During the term of this Agreement and for a period of twelve (12) months following termination of this Agreement, Distributor shall not, without Applied's prior written consent, represent, promote or otherwise try to sell within the Territory any products or product lines that, in Applied's reasonable judgment, compete with one or more Products."

28. Paragraph 10(g) entitled "Legal Expenses" is a prevailing party attorneys' fees and costs provision, wherein the parties agreed that the prevailing party in any legal dispute brought by one party against another would be entitled to reasonable attorneys' fees, costs, and other expenses.

29.    Paragraph 9(j) entitled "Survival of Certain Terms" provided that "the provisions of Section 1, 3, 4, 5(c), 6, 7, 8, 9(h), 9(i), 9(j), and 10 shall survive the termination of this Agreement for any reason."

30.    Contemporaneous with the execution of the Agreement, the parties also entered into an Addendum to the Agreement effective as of January 1, 2010. In the Addendum, Ah Sung agreed under paragraph (b) that: "Distributor further agrees that its use of Applied's name, logo and trademarks is authorized solely pursuant to its activities as an authorized distributor of the Products and that it shall terminate all use of Applied's name, logo and trademarks upon termination of the Agreement."

31.    In summary, under the aforementioned terms of the Agreement, the parties agreed that: (1) any dispute arising out of the Agreement would be adjudicated in a California forum under California law; (2) Defendants, and each of them, were not permitted to copy or counterfeit Applied Medical products, or improperly utilize Applied Medical intellectual property, patents, inventions, copyrights, know-how, or trade secrets to copy Applied Medical products; (3) the Agreement would naturally expire pursuant to its terms on December 31, 2014; (4) upon termination, Ah Sung would transfer to Applied Medical all government approvals and registrations for Applied Medical products, including with regard to intellectual property, and provide Applied Medical a list of all pending and active tenders and a list of all customers in the territory for the twelve (12) months preceding termination, thirty (30) days before expiration; (5) upon termination, Ah Sung would terminate all use of Applied's name, logo and trademarks; (6) Applied Medical would have the sole discretion to choose to directly assume Ah Sung's obligations in each respective territory for ongoing tenders (or their equivalent) including and through the twelve (12) month period after termination, as permitted by law; (7) Ah Sung represented that for the duration of the contract term and for a period of twelve (12) months following termination Ah Sung would not, without

Applied Medical's prior written consent, represent, promote or otherwise try to sell within the Territory any products or product lines that compete with one or more of the Applied Medical products it offered for sale and distribution (or which would be offered for sale directly by Applied Medical itself); (8) the prevailing party in any dispute arising out of the Agreement would be entitled to its reasonable attorneys' fees and costs incurred; and (9) the prohibitions on copying or counterfeiting Applied Medical product or stealing Applied Medical intellectual property found in paragraph 3, transition terms set forth in paragraphs 7(h) and 9(h), survival provision at paragraph 9(j), attorneys' fees and costs clause at 10(g), and governing law and jurisdiction provisions at 10(a), survived expiration of the Agreement.

32.     On at least nine separate occasions between January 2, 2010 and the present, the parties amended the Agreement to modify certain terms related to, *inter alia*, payment, pricing, and the type of products to be sold by Applied Medical and distributed by Ah Sung in South Korea.  Importantly, none of the aforementioned terms related to prohibitions on stealing Applied Medical intellectual property or copying Applied Medical product, termination, transition, survival, forum selection, choice of law, and jurisdiction were amended or revised.  Those terms, which were expressly ratified in each of the amendments, remain in full force and effect.

## EXPIRATION OF THE AGREEMENT, AH SUNG AND CHOI'S PREVIOUS BREACHES, AND THE PRIOR ACTION

33.     On July 31, 2014, Applied Medical sent Ah Sung's President, Mr. Choi, a letter confirming that the Agreement would expire naturally pursuant to its terms on December 31, 2014, and to further confirm that the Agreement would not be renewed.  The letter also served as a follow up communication to the recent discussions between the parties related to termination and transition.  In the letter, Applied Medical expressly reminded Ah Sung of its post-termination obligations under the Agreement which provided for, among other things, a smooth and seamless transition of customers to Applied Medical once the Agreement expired

and the parties' relationship ended.

34.     Applied Medical also sent the July 31, 2014 letter to Ah Sung because during negotiations with Ah Sung, Applied Medical came to believe that Ah Sung intended to disregard its contractual obligations once the relationship ended.  This belief was corroborated by third-party customers and dealers, who told Applied Medical that Ah Sung had disparaged Applied Medical and its products in the market (in contravention of the Agreement's express provisions, including Paragraph 5(g) and 7(e), which provided that Ah Sung would use its best efforts to promote Applied Medical and its products) in an effort to undermine Applied Medical's transition efforts and damage Applied Medical's brand in South Korea. Accordingly, Applied Medical requested that Ah Sung cease and desist from any further wrongful conduct, and further requested assurances from Ah Sung that it would abide by the transition terms contained in the Agreement.

35.     Despite Applied Medical's July 31, 2014 letter, Ah Sung continued to act in contravention of the parties' Agreement in order to undermine Applied Medical's transition efforts, and to position itself to compete directly with Applied Medical once the Agreement expired.

36.     Ah Sung also entered into negotiations with a competitor of Applied Medical to source surgical products through an associated company, including trocars, to current and prospective customers of Applied Medical once the distributor relationship between Applied Medical and Ah Sung ended, to directly compete with Applied Medical while still under contract with Applied Medical. Trocars, which are medical devices used for laparoscopic surgery on the abdomen, are one of the main products manufactured and distributed by the Applied Medical family of companies.

37.     These suspicions were recently confirmed to Applied Medical when it received reports from South Korea that companies operating under the names Meden and/or Medas, which were entities formed by and/or managed by Mr.

Choi's wife, Ms. Park: (1) were manufacturing and/or distributing copies or counterfeit versions of the very Applied Medical products Ah Sung and Choi had distributed on behalf of Applied Medical for over a decade; (2) annual sales of such Meden and/or Medas product exceeded $1 million US; and (3) Meden and/or Medas sought to maintain patents in South Korea for copies of Applied Medical products.

38.     All of the above information relating to the copying or counterfeiting of Applied Medical product by Meden and/or Medas was not reasonably known to Applied Medical, or had not yet transpired, prior to entry of final judgment in the Prior Action in 2016.  As noted above, in the Prior Action, Applied Medical prevailed on different breach of contract and other claims relating to Ah Sung and Choi's violations of certain other distribution obligations under the Agreement relating to the transition for direct sales of Applied Medical products in South Korea.  While Applied Medical is currently seeking to enforce the Prior Action's judgment against Ah Sung and Choi in South Korea, it has learned that Ah Sung and Choi have abused corporate forms, including with respect to Meden and Medas, to evade liability and further defraud Applied Medical with the assistance of Choi's wife, Ms. Park.

**APPLIED MEDICAL OBTAINS COPIES OF THE COUNTERFEIT APPLIED MEDICAL PRODUCTS AND LEARNS OF THE SCOPE AND MAGNITUDE OF DEFENDANTS' MISCONDUCT AND DECEPTION**

39.     Applied Medical's suspicions that Defendants conspired to and actually stole Applied Medical's intellectual property were recently confirmed when it obtained copies of certain Meden surgical products distributed by Medas and Defendants (the "Counterfeit Devices") that appear to be nearly exact or identical copies of Applied Medical's surgical products.  These products are protected by patents in the U.S. and throughout the world.  Moreover, the copied products were identical to the very Applied Medical products Ah Sung and Choi

distributed on behalf of Applied Medical for over a decade.

40.     Applied Medical has also recently learned that Defendants have taken steps to conceal their marketing efforts for the Counterfeit Devices from Applied Medical in order to avoid detection and further legal action.  For example, at a prominent Surgical Oncology Meeting in Korea on February 22, 2019, Applied Medical's sales team learned that Defendants' representatives (including Ah Sung representatives) were also at the meeting and promoting the Counterfeit Devices, which were exact copies of Applied Medical's products.  Applied Medical's sales team also learned that Defendants had inquired with the meeting organizers whether Applied Medical would be attending the event.  As soon as Defendants discovered that Applied Medical sales team members were in attendance, Defendants withdrew the Counterfeit Devices from the Surgical Oncology Meeting and stopped participating in (and departed from) the event.

41.     Applied Medical has also recently learned that Defendants have applied for, and obtained in the name of Meden and/or Medas, patents in South Korea for at least a dozen medical device products that are replicas or virtually identical copies of Applied Medical products, in violation of the Agreement and U.S. and international intellectual property laws.  These are the same Counterfeit Devices being sold by Defendants in South Korea.  These Counterfeit Devices include, but are not limited to, the following: (1) Meden's "ASE Optic-Fix Trocar" (which are exact copies of various Applied Medical trocars); (2) Meden's "O-TRAC" (which is a copy of the Applied Medical Alexis medical device; (3) Meden's "Gelpass" (which is a copy of the Applied Medical GelPOINT medical device; and (4) Meden's "ASE Handport" (which is a copy of the Applied Medical GelPort device).

42.     Applied Medical is informed and believes that Defendants are selling the Counterfeit Devices to nearly two dozen hospitals or other customers in South Korea, including, but not limited to: (1) Seoul National University Hospital; (2)

Chung-Ang University Hospital; (3) Koryo ("Korea") University Hospital; (4) Sacred Heart University Hospital; (5) Kambuk Samsung Hospital; (5) Inje University (Pusan) Hospital; (6) Pusan/Yangsan National University Hospital; (7) Kyungsang University Hospital; (8) Hwasun Chonnam University Hospital; (9) Ewha Women's University Hospital(s); and (10) Korea Cancer Center Hospital. Applied Medical is informed and believes that total annual sales to these and other hospitals/customers currently exceeds $1 million US.

### A COMPARISON OF TWO APPLIED MEDICAL TROCARS WITH THE DEFENDANTS' COUNTERFEIT DEVICES CONFIRMS DEFENDANTS' MISAPPROPRIATION AND BREACHES

43. For purposes of this Complaint, for the sake of brevity, and to illustrate Defendants' wrongdoing, Applied Medical compared two examples of the Counterfeit Devices to Applied Medical's devices, and found the Counterfeit Devices to be nearly ***exact*** copies of the genuine Applied Medical devices. Specifically, Applied Medical compared: (1) Applied Medical's CTR03 5 x 100mm Kii® Optical Access System trocar ("Applied #1") to Meden's ASEP05100 5 x 100mm trocar ("Meden #1"); and (2) Applied Medical's CTR73 12 x 100mm Kii® Optical System trocar ("Applied Medical #2") to Meden's 12 x 100mm ASEP12100 trocar ("Meden #2).

44. As previously noted, a trocar is a medical device used for minimally invasive surgeries.  More specifically, the purpose of a trocar is to establish a path of entry for endoscopic instruments for use during general, abdominal, gynecological, and thoracic minimally invasive surgical procedures or to gain access through tissue planes and/or potential spaces for endoscopic instruments.

45. Applied Medical is informed and believes that the three primary trocar manufacturers/suppliers worldwide (with more than 50% market share) are: (1) Applied Medical; (2) Ethicon Endosurgery, a subsidiary of Johnson & Johnson; and (3) Covidien, a subsidiary of Medtronic.  Each of the three manufacturers has

unique designs that are specific to each manufacturer, and each manufacturer's products have distinct and identifiable features that set it apart from other manufacturers.  Most (if not all) of these features are protected intellectual property developed by each manufacturer around the world.

**Figure A: Applied Medical #1 (Left) and Meden #1 (Right)**



**Figure B: Applied Medical #2 (Two Left) and Meden #2 (Two Right)**



COMPLAINT
Case No. 8:20-cv-1934

45.    As shown in the two images above (Figures A & B), the Applied
Medical and Counterfeit Devices are virtually identical in shape, size and
dimension, with the exception of the addition of Applied Medical's logo on the seal
housing of the Applied Medical trocar and the addition of suture loops on the
cannula—the thin tubes—just below the housing.

46.    The following photographs of the Applied Medical trocars side-by-
side with the Counterfeit Devices further demonstrate that Defendants copied
Applied Medical's designs' features and dimensions, down to the millimeter.

**Figure C: Applied Medical #1 (Left) and Meden #1 (Right)**



**Figure D: Applied Medical #2 (Left) and Meden #2 (Right)**



COMPLAINT
Case No. 8:20-cv-1934

**Figure E: Applied Medical #1 (Left) and Meden #1 (Right)**



**Figure F: Applied Medical #2 (Left) and Meden #2 (Right)**



**Figure G: Applied Medical #1 (Left) and Meden #1 (Right)**



COMPLAINT
Case No. 8:20-cv-1934

**Figure H: Applied Medical #2 (Left) and Meden #2 (Right)**



47.     Figures C through H are photographs of the Applied Medical and Counterfeit Device "obturators" side-by-side, including zoomed in photos of the tips of the obturators (Figures G & H).  An obturator is the elongated part of the trocar that is placed in the seal and cannula during insertion into the abdominal (or other) wall, and is then removed during surgery.

48.     As the Court can see, the Counterfeit Devices' obturator (Meden #1 and Meden #2) are an exact replica of Applied Medical's obturator, and mimics its unique shape—the sequential helix design—which was developed over ten years ago by Applied Medical.  As displayed in Figures C and D, the molding pattern (the holes and marks on the side of the obturator) for each of the devices is also identical in both company's products, further confirmation that the Counterfeit Devices are nearly exact copies of Applied Medical's trocars.

49.     There are additional similarities, explained in further detail below, relating to the trocars' cannulas and "z-threads" which further confirm that the Counterfeit Devices are copies of the Applied Medical trocars.

//

//

COMPLAINT
Case No. 8:20-cv-1934

1

**Figure I: Applied Medical #1 (Left) and Meden #1 (Right)**

2

3

4

5

6

7

8

9

10

11

12

**Figure J: Applied Medical #2 (Left) and Meden #2 (Right)**



13

14

15

16

17

18

19

20

21

22

23      50.     Figures I and J above display the proximal end of the cannulas in both

24  Applied Medical's and the Counterfeit Devices' 5 x 100mm (Applied/Meden #1)

25  and 12 x 100mm (Applied/Meden #2) trocars.  But for the suture loops on Applied

26  Medical's trocar, the components are indistinguishable from one another.  Indeed,

27  the color of the two 5 x 100mm trocars (Figure I), the bevel of the cannulas, and the

28  taper of the distal portion of the cannulas are nearly identical.  A comparison of the

COMPLAINT
Case No. 8:20-cv-1934

measurements of the 5 x 100mm and 12 x 100mm trocars cannulas in Figures I and J further confirms that the Counterfeit Devices are copies of the Applied Medical trocars.

51.     For example, Applied Medical's cannula dimensions on its 5 x 100mm trocar (Applied #1) are unique to the Applied Medical trocar—something that is copied precisely by Defendants.  More specifically, the internal dimensions of Applied Medical's 5mm trocar cannula is larger than any other 5mm cannula on the market.  Applied Medical's 5mm trocar includes a larger cannula dimension to accommodate a unique clip applier that Applied Medical designs and manufactures, known as the "CA500."  The clip applier delivers a clip that is equivalent to a 10mm clip applier but can pass through a smaller cannula.  The CA500 requires a diameter slightly larger than competitive cannulas.  This is replicated with exacting precision in the Counterfeit Device (Meden #1).  Moreover, the overall length of the Applied Medical and Counterfeit Device cannulas is identical at 188.3mm  The outside diameter at the top of the cannula in each is also identical at 22mm.  The inner diameters of the cannulas are both 7mm.

52.     Likewise, a comparison of the measurements of the 12 x 100mm trocar cannulas in Figure J confirms Defendants' meticulous copying of Applied Medical's trocar (Applied/Meden #2).  The outside dimension of the 12 x 100mm trocar cannula, just above the o-ring, is 31mm for both.  The o-ring grooves are also identical at 2.66mm in width.  Additionally, the design and manufacture of the 12 x 100mm cannula to seal connections are also identical.

//

//

//

COMPLAINT
Case No. 8:20-cv-1934

**Figure K: Applied Medical #1 (Left) and Meden #1 (Right)**



**Figure L: Applied Medical #2 (Left) and Meden #2 (Right)**

53.     Figures K and L show the z-thread design of Applied Medical's cannulas and the z-thread design of the Counterfeit Device.  The z-threads assist in holding the cannula of the trocar in place in the abdominal wall during surgery and are part of Applied Medical's unique attachment design.  A careful examination of Figure K, the 5 x 100mm trocar (Applied/Meden #1), reveals that each manufacturer's cannula has 20 threads.  In fact, not only are the z-thread designs of

COMPLAINT
Case No. 8:20-cv-1934

the two manufacturers' cannulas identical, the measurements of Applied Medical's and Meden's z-threads are exactly the same.  The overall length of the z-threads in both manufacturers' cannulas for the 5 x 100mm trocar is also the same at 60mm.

54.    The similarities for the 12 x 100mm trocars (Applied/Meden #2) are also evident.  As the Court can see in Figure L, each cannula has 25 z-threads. Further, the overall length of the z-thread for each cannula is the same at 62mm. Both cannulas also have inner diameters of 13mm.  That is, each of the Applied Medical and Meden cannulas not only depict the same z-thread design, but also mirror the exact same measurements.

55.    The seals for each of the Applied Medical and Counterfeit Device trocars are also nearly identical, as explained and shown in Figures M-R below.

**Figure M: Applied Medical #1 (Left) and Meden #1 (Right)**



COMPLAINT
Case No. 8:20-cv-1934

**Figure N: Applied Medical #2 (Left) and Meden #2 (Right)**



**Figure O: Applied Medical #1 (Left) and Meden #1 (Right)**



**Figure P: Applied Medical #2 (Left) and Meden #2 (Right)**



**Figure Q: Applied Medical 5 x 100mm (Left) and Meden 5 x 100mm (Right)**



**Figure R: Applied Medical 12 x 100mm (Left) and Meden 12 x 100mm (Right)**



56.     As the Court can see above, the Applied Medical and Counterfeit Device trocar seals are virtually identical.  Specifically, Figures M through R above display the assembled seals in the 5 x 100mm and 12 x 100mm Applied Medical and Meden trocars, side-by-side.  Figures M and N show a side-by-side comparison of the disassembled seals, which includes three pieces: a rubber double duckbill valve, a rubber septum valve, and a plastic shield that protects the septum from instrument tears.  This seal, part of Applied Medical's proprietary attachment design, is completely unique to Applied Medical—no other trocar manufacture replicates Applied Medical's seal design.  This design is precisely replicated and copied by Defendants.

57.     Both the Applied Medical and Meden 5 x 100mm and 12 x 100mm trocars also have a 3mm o-ring groove, which is the black rubber part also displayed in Figures M and N.  The o-ring groove serves as an air/gas tight seal between the cannula and the seal housing.  This sealing design is unique to Applied Medical's trocar, but again, is replicated exactly by Meden and Defendants in the Counterfeit Devices.

46.     Based on the above facts, it is beyond dispute that Defendants, and each of them, have violated the Agreement and various applicable intellectual property, unfair competition and other laws by copying Applied Medical products, stealing Applied Medical's intellectual property, and continuing to manufacture, distribute and sell the Counterfeit Devices.

## FIRST CAUSE OF ACTION

## (DECLARATORY RELIEF AGAINST DEFENDANTS)

47.     Applied Medical incorporates the allegations contained in Paragraphs 1 through 46 above as though fully set forth herein.

48.     An actual controversy has arisen and now exists between Applied Medical and Defendants relating to the parties' rights and obligations under the Agreement for which Applied Medical desires a declaration of rights.

49.     Defendants' misconduct contravenes the express terms of the Agreement.  Accordingly, pursuant to 28 U.S.C. § 2201, Applied Medical requests a declaration that:

(A)     Pursuant to paragraph 10(a) of the Agreement, any and all disputes arising out of the Agreement must be adjudicated in a California forum under California law;

(B)     Pursuant to paragraph 3(a) of the Agreement, Defendants have no right, title or interest in any Applied Medical product lines, nor in any intellectual property of Applied Medical, its parent, subsidiaries or affiliates, including, but not limited to, patents, trademarks, trade names, domain

COMPLAINT
Case No. 8:20-cv-1934

names, inventions, copyrights, know-how, and trade secrets, related to the design, manufacture, operation or service of the products.

(C)    Pursuant to paragraph 3(b) of the Agreement, Defendants have no license, expressly or by implication, to manufacture, duplicate or otherwise copy or reproduce any of Applied Medical's products, and Defendants, and each of them, are not permitted to copy Applied Medical products or misappropriate Applied Medical's intellectual property under the express terms of the Agreement.

(D)    Pursuant to paragraph 7(b) of the Agreement entitled "Warranty," Defendants were prohibited from copying, manufacturing, selling, and/or distributing the Counterfeit Devices and from continuing to undermine Applied Medical's transition efforts in South Korea, including by engaging in a conspiracy with one another in violation of that provision during the 12 month period after expiration of the Agreement;

(E)    Pursuant to paragraph 10(g) of the Agreement, the prevailing party in any legal dispute arising out of the Agreement is entitled to its attorneys' fees and costs.

(F)    Defendants, and each of them, are jointly and severally obligated to comply with the provisions of the Agreement, as agents and alter egos of one another, and based on the unity of financial and transactional interest(s) each Defendant has in one another.

## SECOND CAUSE OF ACTION

### (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

50.    Applied Medical incorporates the allegations contained in Paragraphs 1 through 49 above as though fully set forth herein.

51.    Applied Medical and Ah Sung/Eun Kyoo Choi executed the Agreement, which is a valid, binding, and enforceable contract.

52.    Applied Medical has fully performed all of its obligations and/or

COMPLAINT
Case No. 8:20-cv-1934

conditions under the Agreement, except to the extent caused by Defendants acts, omissions, or breaches, entitling it to all of the benefits of the Agreement.

53.     Defendants have breached and continue to breach paragraphs 7(h) by refusing to transfer the relevant government approvals, product registrations, customer lists, and related documents, by or before December 1, 2014 as required by the express terms of the Agreement, and by affirmatively seeking to register intellectual property and other rights in South Korea on behalf of various entities for Applied Medical products or competing devices (including, but not limited to, the Counterfeit Devices).

54.     Defendants have also breached paragraphs 7(b) and 9(h) by manufacturing, selling, and/or distributing the Counterfeit Devices while Applied Medical is seeking to transition to a direct sales system in South Korea, and otherwise failing to cooperate with Applied Medical.  Under paragraph 7(b), Ah Sung, Mr. Choi (and Defendants) agreed not to sell products in the territory that compete with Applied Medical, which they continue to do by engaging in a conspiracy to manufacture, sell, and/or distribute the Counterfeit Devices.  Under paragraph 9(h), Ah Sung, Mr. Choi (and Defendants) agreed to fully cooperate with Applied Medical and take all steps necessary to support the complete transition of customers to Applied Medical—a provision which by its very nature prohibits Defendants from manufacturing, selling, and/or distributing the Counterfeit Devices.  By manufacturing, selling, and/or distributing the Counterfeit Devices, Defendants have violated both the letter and spirit of these provisions.

55.     Defendants have breached and continue to breach paragraph (b) of the Addendum to the Agreement by continuing to use Applied Medical's name, logo and trademarks (and likeness), including by manufacturing, selling, and/or distributing the Counterfeit Devices which are exact or virtually identical copies of Applied Medical products.

56.     Defendants, and each of them, are directly liable for the breaches

identified in this Complaint pursuant to alter ego liability for several reasons.  There is a unity of interest and ownership of Ah Sung, Mr. Choi, Ms. Park, Meden and Medas such that each of the Defendants are alter egos of Mr. Choi and Ah Sung (and one another).  Indeed, Mr. Choi admitted in the Prior Action and in enforcement proceedings in South Korea pertaining to the Prior Action's judgment that Ah Sung is the alter ego of Mr. Choi, and vice versa.  Mr. Choi is also the sole or majority shareholder of Ah Sung.  He was also the individual who had all final decision making power at Ah Sung relating to Applied Medical, and, on information and belief, has the decision-making power to start, stop, or continue to act in contravention of (or in compliance with) the Agreement.  This includes spearheading the conspiracy to manufacture, sell, and/or distribute the Counterfeit Devices along with all Defendants.  Applied Medical is also informed and believes that Ms. Park maintains an ownership interest in Ah Sung, including as Mr. Choi's wife.  Ms. Park is also the President and/or majority shareholder of Meden and/or Medas, as admitted by Mr. Choi in his deposition in the Prior Action.  Meden and Medas (and other entities) have also registered for intellectual property and other protections in South Korea for the Counterfeit Devices. Observance of the corporate form for Ah Sung, Meden, Medas and each of them would lead to an inequitable result because it would sanction all of Defendants' (and Ah Sung/Mr. Choi's) breaches and other unlawful acts, and would allow Defendants to avoid liability by engaging in gamesmanship and abusing corporate forms.  This is particularly true here given Ah Sung had previously represented as a threat to Applied Medical that it would shutter all of its operations in 2015 (which was recently confirmed), and transfer its operations and capital to Meden, Medas and/or Ms. Park.

57.    As a direct and proximate result of these and other breaches, Applied Medical has been and will continue to be damaged by Defendants' breaches, and is entitled to reimbursement and recovery for any and all losses resulting from the

COMPLAINT
Case No. 8:20-cv-1934

foregoing breaches (including attorneys' fees), an amount which shall be proven at trial which Applied Medical alleges is well in excess of the jurisdictional minimum of this Court.

## **THIRD CAUSE OF ACTION**

### **(BREACH OF IMPLIED COVENANT OF GOOD FAITH/FAIR DEALING AGAINST ALL DEFENDANTS)**

58.     Applied Medical incorporates the allegations contained in Paragraphs 1 through 57 above as though fully set forth herein.

59.     The Agreements imposed on the parties a duty of good faith and fair dealing in their negotiation, consummation, and performance.  Pursuant to that implied covenant, Applied Medical and Defendants had a duty to refrain from acting in any manner that would unfairly interfere with the right of another party to receive the benefit of its bargain.

60.     Applied Medical has complied with the implied covenant of good faith and fair dealing with respect to the Agreement, and has substantially complied with all of the terms, conditions, representations and warranties required of it under the Agreement (or has been otherwise excused from compliance with certain terms, conditions, representations and warranties due to Defendants' acts, omissions and breaches).  Accordingly, the conditions required for Ah Sung's and Mr. Choi's (and Defendants') full performance under the Agreement has occurred, and Applied Medical has not excused Ah Sung or any Defendants from complying with the implied covenant of good faith and fair dealing accompanying the Agreement.

61.     However, Defendants have breached the implied covenant of good faith and fair dealing accompanying the Agreement by unfairly interfering with Applied Medical's right to receive the benefits of the Agreement.  This includes, among other things, Defendants' manufacturing, selling, and/or distributing the Counterfeit Devices; Defendants' efforts to disrupt Applied Medical's economic relationship with existing and prospective customers in contravention of the letter

and spirit of the parties' Agreement; Ah Sung's and Defendants' refusal to abide by the transfer, transition and other terms governing the parties' post-termination conduct; and Defendants' express and implied attempts to disparage Applied Medical and threatening, harassing, and otherwise intimidating conduct aimed at Applied Medical's existing and prospective customers and dealers.

62.     Defendants, and each of them, are directly liable for the breaches identified in this Complaint pursuant to alter ego liability.  There is a unity of interest and ownership of Ah Sung, Mr. Choi, Ms. Park, Meden and Medas such that each of the Defendants are alter egos of Mr. Choi and Ah Sung (and one another).  Indeed, Mr. Choi admitted in the Prior Action and in enforcement proceedings in South Korea pertaining to the Prior Action's judgment that Ah Sung is the alter ego of Mr. Choi, and vice versa.  Mr. Choi is also the sole or majority shareholder of Ah Sung.  Mr. Choi is also the President and CEO of Ah Sung, founded the company, and signed all agreements and material documents between the parties.  He was also the individual who had all final decision making power at Ah Sung relating to Applied Medical, and, on information and belief, has the decision-making power to start, stop, or continue to act in contravention of (or in compliance with) the Agreement.  This includes spearheading the conspiracy to manufacture, sell, and/or distribute the Counterfeit Devices along with all Defendants.  Applied Medical is also informed and believes that Ms. Park maintains an ownership interest in Ah Sung, including as Mr. Choi's wife.  Ms. Park is also the President and/or majority shareholder of Meden and/or Medas, as admitted by Mr. Choi in his deposition in the Prior Action.  Meden and Medas (and other entities) have also registered for intellectual property and other protections in South Korea for the Counterfeit Devices. Observance of the corporate form for Ah Sung, Meden, Medas and each of them would lead to an inequitable result because it would sanction all of Defendants' (and Ah Sung/Mr. Choi's) breaches and other unlawful acts, and would allow Defendants to avoid liability by engaging in

COMPLAINT
Case No. 8:20-cv-1934

gamesmanship and abusing corporate forms.  This is particularly true here given Ah Sung had previously represented as a threat to Applied Medical that it would shutter all of its operations in 2015 (which was recently confirmed), and transfer its operations and capital to Meden, Medas and/or Ms. Park.

63.    As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Applied Medical has suffered damages, an amount which shall be proven at trial which Applied Medical alleges is well in excess of the jurisdictional minimum of this Court.

## FOURTH CAUSE OF ACTION

### (INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS)

64.    Applied Medical incorporates the allegations contained in Paragraphs 1 through 63 above as though fully set forth herein.

65.    Applied Medical maintained, and continues to maintain, an economic relationship with customers in South Korea that purchases or purchased its products, all with the probability of future economic benefit to Applied Medical based upon the likelihood of Applied Medical's continued business with such customers.  This includes the contemplated customer relationships that were secured based on the goodwill generated through the Agreement and which were to continue to benefit Applied Medical based on Ah Sung's obligations and duties under the Agreement.

66.    Defendants had actual knowledge of Applied Medical's relationships with its customers and Applied Medical's prospective business based on the past sales of Applied Medical products to those customers, including through the Agreement with Ah Sung, Mr. Choi (and Defendants).

67.    Defendants intended to and did disrupt Applied Medical's economic relationship with these customers, by among other things, manufacturing, selling, and/or distributing the Counterfeit Devices and continuing to disparage Applied

COMPLAINT
Case No. 8:20-cv-1934

Medical to these customers and in the marketplace.

68.     Applied Medical is also informed and believes that Defendants have engaged in independently wrongful acts to disrupt existing and ongoing economic relationships between Applied Medical and customers, including by manufacturing, selling, and/or distributing the Counterfeit Devices, the solicitation of Applied Medical's customers for the Counterfeit Devices while Defendants had continuing obligations to Applied Medical, including Ah Sung and Mr. Choi specifically as Applied Medical's exclusive agent distributor, breach of various contractual obligations, including but not limited to those related to transfer and transition, that Defendants owed and continues to owe to Applied Medical, and for fraud and violations of California's unfair competition law.

69.     Defendants, and each of them, are directly liable for the breaches and interference identified in this Complaint pursuant to alter ego liability.  There is a unity of interest and ownership of Ah Sung, Mr. Choi, Ms. Park, Meden and Medas such that each of the Defendants are alter egos of Mr. Choi and Ah Sung (and one another).  Indeed, Mr. Choi admitted in the Prior Action and in enforcement proceedings in South Korea pertaining to the Prior Action's judgment that Ah Sung is the alter ego of Mr. Choi, and vice versa.  Mr. Choi is also the sole or majority shareholder of Ah Sung.  Mr. Choi is also the President and CEO of Ah Sung, founded the company, and signed all agreements and material documents between the parties.  He was also the individual who had all final decision making power at Ah Sung relating to Applied Medical, and, on information and belief, has the decision-making power to start, stop, or continue to act in contravention of (or in compliance with) the Agreement.  This includes spearheading the conspiracy to manufacture, sell, and/or distribute the Counterfeit Devices along with all Defendants.  Applied Medical is also informed and believes that Ms. Park maintains an ownership interest in Ah Sung, including as Mr. Choi's wife.  Ms. Park is also the President and/or majority shareholder of Meden and/or Medas, as

admitted by Mr. Choi in his deposition in the Prior Action. Meden and Medas (and other entities) have also registered for intellectual property and other protections in South Korea for the Counterfeit Devices. Observance of the corporate form for Ah Sung, Meden, Medas and each of them would lead to an inequitable result because it would sanction all of Defendants' (and Ah Sung/Mr. Choi's) breaches and other unlawful acts, and would allow Defendants to avoid liability by engaging in gamesmanship and abusing corporate forms. This is particularly true here given Ah Sung had previously represented as a threat to Applied Medical that it would shutter all of its operations in 2015 (which was recently confirmed), and transfer its operations and capital to Meden, Medas and/or Ms. Park.

70. As a direct result of Defendants' wrongful conduct, Applied Medical has been seriously damaged, and will continue to be damaged. Defendants' misconduct is intentional, oppressive, fraudulent, malicious, and despicable, and was engaged in for financial gain at the expense of Applied Medical and to harm Applied Medical. Thus, Applied Medical is entitled to an award of punitive damages in an amount sufficient to punish Defendants and to deter such conduct in the future.

## FIFTH CAUSE OF ACTION
### (PROMISSORY FRAUD AGAINST ALL DEFENDANTS)

71. Applied Medical incorporates the allegations contained in Paragraphs 1 through 70 above as though fully set forth herein.

72. Under paragraph 5(g) of the Agreement entitled "Distributor Conduct of Business," Ah Sung, Mr. Choi (and Defendants) agreed to "use its best efforts to promote, develop a market for, sell and distribute the Products for use in the Territory." Based on Ah Sung's and Mr. Choi's promise to use its best efforts, Applied Medical agreed to appoint Ah Sung as its exclusive distributor for the sale of Applied Medical products in South Korea, agreed to enter into the Agreement and all amendments with Ah Sung, and agreed to provide Ah Sung discounted

pricing under paragraph 5(b).

73.    Applied Medical is informed and believes, and based thereon alleges, that Ah Sung, Mr. Choi (and each Defendant) agreed to, or conspired to agree to, these and other provisions contained in the Agreement even though they had no intent at the time of execution (or at the time these provisions were ratified via the nine amendments to the Agreement, which were executed and effective as of February 2010, January 2011, July 2011, July 2011, January 2012, April 2012, January 2013, January 2013, and January 2014, respectively) to use their best efforts and uphold these and other provisions of the Agreement, or which they knew were false, and had plotted, in bad faith, to mislead Applied Medical throughout the negotiation, consummation and performance of the Agreement. This includes Defendants' specific misconduct and plans to manufacture, sell, and/or distribute the Counterfeit Devices during the course of and at the time of execution of the Agreement and all amendments.

74.    Applied Medical is informed and believes, and based thereon alleges, that Defendants intended to cause Applied Medical to rely on these promises, including the promise that Ah Sung would use its best efforts in South Korea, to induce Applied Medical to enter into the Agreement (and its amendments), and to further Defendants' scheme to manufacture, sell, and/or distribute the Counterfeit Devices.

75.    Applied Medical reasonably relied on these promises and the other terms under which Defendants agreed to be bound at the time the parties executed the Agreement and all amendments thereto, and would not have otherwise contracted with Ah Sung to serve as Applied Medical's exclusive distributor in South Korea, had Applied Medical known the truth about Defendants' scheme. Applied Medical also would never have agreed (including entering into multiple amendments to the Agreement ratifying its terms) to sell Applied Medical's products to Ah Sung or Defendants for distribution at all if had been aware of

Defendants' conspiracy to manufacture, sell, and/or distribute the Counterfeit Devices.

76.   As a direct and proximate result of Defendants' promissory fraud, Applied Medical has suffered substantial damages, and is entitled to reimbursement and recovery for any and all losses resulting from the foregoing misconduct (including attorneys' fees) and punitive damages, an amount which shall be proven at trial which Applied Medical alleges is well in excess of the jurisdictional minimum of this Court.

## SIXTH CAUSE OF ACTION

### (FRAUD/INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS)

77.   Applied Medical incorporates the allegations contained in Paragraphs 1 through 76 above as though fully set forth herein.

78.   As set forth above, Defendants made numerous material false misrepresentations and/or omissions which Defendants knew were false, or which were made recklessly without regard for their truth.

79.   This includes, but is not limited to, Defendants' misrepresentations and/or omissions pertaining to entering into and consummating the Agreement and all amendments when Defendants were conspiring to manufacture, sell, and/or distribute the Counterfeit Devices.

80.   Defendants intended that Applied Medical rely on these and the other misrepresentations and/or omissions stated above and in the paragraphs incorporated by reference to induce Applied Medical into entering into the Agreements, and to deceive Applied Medical to provide Defendants the intellectual property and other information necessary for Defendants to execute their conspiracy to manufacture, sell, and/or distribute the Counterfeit Devices.

81.   It was reasonably foreseeable that Applied Medical would rely to its detriment on these material misrepresentations and/or omissions by Defendants,

because Ah Sung was Applied Medical's sole and exclusive distributor in South Korea, was obligated under the express and implied terms of the Agreement to refrain from stealing Applied Medical's intellectual property and other information, and prohibited from manufacturing, selling, and/or distributing the Counterfeit Devices in South Korea.

82.     Applied Medical did justifiably rely on Ah Sung's, Mr. Choi's and Defendants' misrepresentations in entering into the Agreement (and amendments) and providing Ah Sung (and Defendants) the rights afforded under the Agreement, and Applied Medical's reliance on Defendants' misrepresentations was a substantial factor in causing it harm.  Namely, Applied Medical would never have agreed to sell Applied Medical's products to Ah Sung and Defendants had Defendants disclosed their scheme to manufacture, sell, and/or distribute the Counterfeit Devices.

83.     By reason of, and as a proximate result of, the acts and/or omissions of Defendants, and/or other persons acting on their behalf, Applied Medical has suffered compensable and consequential damages, in types and amounts to be proven at trial but which exceed the jurisdictional minimum of this Court.  Applied Medical also demands exemplary, punitive damages against Defendants, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

## (NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS)

84.     Applied Medical incorporates the allegations contained in Paragraphs 1 through 83 above as though fully set forth herein.

85.     As set forth above, Defendants made numerous material false misrepresentations and/or omissions which Defendants had no reasonable grounds to believe to be true.

86.     This includes, but is not limited to, Defendants' misrepresentations and/or omissions pertaining to entering into and consummating the Agreement and

COMPLAINT
Case No. 8:20-cv-1934

all amendments when Defendants were conspiring to manufacture, sell, and/or distribute the Counterfeit Devices, even though Defendants knew such facts were material to the Agreement and would have caused Applied Medical to not agree to sell Ah Sung Applied Medical's products or enter into the Agreement.

87.  Defendants intended that Applied Medical rely on these and the other misrepresentations and/or omissions stated above and in the paragraphs incorporated by reference.

88.  It was reasonably foreseeable that Applied Medical would rely to its detriment on these material misrepresentations and/or omissions by Defendants, because Ah Sung was Applied Medical's sole and exclusive distributor in South Korea, was obligated under the express and implied terms of the Agreement to refrain from stealing Applied Medical's intellectual property and other information, and prohibited from manufacturing, selling, and/or distributing the Counterfeit Devices in South Korea.

89.  Applied Medical did justifiably rely on Ah Sung's, Mr. Choi's and Defendants' misrepresentations in entering into the Agreement and providing Ah Sung (and Defendants) the rights afforded under the Agreement, and Applied Medical's reliance on Defendants' misrepresentations was a substantial factor in causing it harm.  Namely, Applied Medical would never have agreed to sell Applied Medical's products to Ah Sung and Defendants had Defendants disclosed their scheme to manufacture, sell, and/or distribute the Counterfeit Devices.

90.  By reason of, and as a proximate result of, the acts and/or omissions of Defendants, and/or other persons acting on their behalf, Applied Medical has suffered compensable and consequential damages, in types and amounts to be proven at trial but which exceed the jurisdictional minimum of this Court.  Applied Medical also demands exemplary, punitive damages against Defendants, in an amount to be determined at trial.

COMPLAINT
Case No. 8:20-cv-1934

## EIGHT CAUSE OF ACTION

## (UNFAIR COMPETITION AGAINST ALL DEFENDANTS)

91.     Applied Medical incorporates the allegations contained in Paragraphs 1 through 90 above as though fully set forth herein.

92.     By the acts alleged in the preceding paragraphs, Defendants have committed business acts and practices that are unlawful, unfair and fraudulent in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-09.  This includes, but is not limited to, stealing Applied Medical's intellectual property and other information; manufacturing, selling, and/or distributing the Counterfeit Devices in South Korea; disrupting Applied Medical's relationships with its customers; and the solicitation of Applied Medical's customers for competitor products and the Counterfeit Devices.

93.     Defendants' business acts and practices are unfair and violate the UCL because Defendants' acts impair fair and honest competition and otherwise significantly harm competition in the market for Applied Medical's products.

94.     Applied Medical will be denied an effective and complete remedy absent the relief requested herein, including injunctive relief foreclosing Defendants from continuing to engage in any of the acts of unfair competition noted above.

95.     Applied Medical has suffered injury in fact and has lost money or property as a result of such unfair competition, including but not limited to loss of revenue, loss of business relationships and customers, loss of goodwill, increased costs to compete in the South Korean marketplace, including increased out-of-pocket expenses incurred to combat Defendants' continuing wrongful conduct.

96.     All Defendants are directly liable for unfair competition pursuant to their direct participation in the unlawful, unfair and/or fraudulent conduct as explained in further detail above.

## PRAYER FOR RELIEF

WHEREFORE, Applied Medical respectfully requests a trial by jury, and

COMPLAINT
Case No. 8:20-cv-1934

demands judgment against Defendants as follows:

      a.     Money, general and special damages, as determined by the jury at trial;

      b.     Punitive damages on those causes of action for which they are recoverable, as determined by the jury at trial;

      c.     Declaratory relief, as set forth in the First Cause of Action above;

      d.     Attorneys' fees and costs, including as provided for under the Agreement; and,

      e.     Such other relief that this Court deems appropriate, including injunctive relief to enjoin Defendants from continuing to engage in unlawful conduct with respect to the Counterfeit Devices.

Dated:     October 6, 2020         JONES DAY

                            By:/s/ *Edward S. Chang*
                               Edward S. Chang

                            Attorneys for Plaintiff
                            APPLIED MEDICAL DISTRIBUTION CORPORATION